UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES BOLAND, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**SMITH & ROGERS CONSTRUCTION LTD.,**<br><br>Defendant. | Case No. 15-cv-01386 (CRC) |

**MEMORANDUM OPINION**

Plaintiffs in this ERISA action—trustees of two union pension funds—seek to recover late fees from an Ohio-based construction company and to conduct an audit of the company's books and records, from November 2009 onward, to determine if there are any delinquent contributions. Despite having been properly served, the company has not responded to the complaint, the Clerk's entry of default, or the Court's order to show cause as to why judgment should not be entered against it. Plaintiffs now request an entry of default judgment, monetary damages, attorney's fees, and an injunction. As Plaintiffs have adequately established that the company is liable and that they are entitled to all of the requested relief, the Court will grant their motion and enter judgment against the company.

### I.     Background

Smith & Rogers, LTD ("Smith & Rogers") is an Ohio-based company that employs or has employed members of the International Union of Bricklayers and Allied Craftworkers. Compl. ¶¶ 6, 7. The company and the union entered into collective-bargaining agreements that obligated Smith & Rogers to make payments to funds benefitting the union's members, including the Bricklayers & Trowel Trades International Pension Fund ("IPF"), the International Masonry Institute ("IMI"), and affiliated Local Ohio Bricklayers Funds ("Local Funds") on whose behalf the

IPF is authorized to file suit.[1]  Id. ¶¶ 1–10; Decl. David F. Stupar Supp. Pls.' Mot. Default J. ("Stupar Decl.") ¶¶ 1, 3, 7.

The IPF and the IMI are "employee benefit plans" and "multiemployer plans" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 et seq. With these designations come certain obligations.  Under ERISA and the funds' written procedures governing the collection of employer contributions ("Collection Procedures"), Smith & Rogers was required to submit monthly reports and payments to the IPF, IMI, and Local Funds for covered employees. Stupar Decl. Attach. 1 § I.A.2. If Smith & Rogers failed to make the required contributions, the trustees were entitled to file suit to recover (1) 15 percent interest per year on the unpaid contributions and dues checkoff; (2) an additional assessment of 15 percent interest per year or liquidated damages of 20 percent of the delinquent contributions, whichever is higher; and (3) attorney's fees and other litigation costs. See id. § II.A.; accord 29 U.S.C. § 1132(g)(2) (allowing a fiduciary to file suit "for or on behalf of a plan to enforce section 1145 of this title"). Section 1132(g)(2)E) of ERISA likewise authorizes courts to grant other forms of equitable relief, including an injunction requiring a defendant to submit to an audit, remit any delinquent contributions found as a result of the audit, and pay costs associated with it. See Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass LLC, 635 F. Supp. 2d 21, 26 (D.D.C. 2009) (quoting Flynn v. Mastro Masonry Contractors, 237 F. Supp. 2d 66, 70 (D.D.C. 2002)).

Plaintiffs, trustees of the IPF and the IMI, allege that Smith & Rogers failed to pay Local Funds late fees for "covered work performed in the geographic jurisdiction of Local 36 [Ohio] and Local 55 [Ohio] during various months from December 2011 through October 2014." Compl. ¶ 12;

---

[1] These affiliated Local Funds include the Ohio Bricklayers Local No. 55 Pension Fund, the Ohio Bricklayers Local No. 55 VEBA Fund, and the Ohio Bricklayers Health and Welfare Fund. .

2

Stupar Decl. ¶ 12. Plaintiffs further allege that they sought access to Smith & Roger's books from November 2009 through the present to conduct an audit, but Smith & Rogers refused to comply. Comp. ¶ 11. Smith & Rogers was properly served on November 12, 2015. Pls.' Mot. Entry Default J. 1. It did not respond to the complaint, however, and the Clerk of the Court entered default on December 14, 2015. Id. at 2. Plaintiffs now petition the Court to enter a default judgment, seeking a monetary judgment against Smith & Rogers in the amount of $16,868.36, id., which includes late fees, process server costs, filing fees, and attorney's fees and costs, Mehler Decl. ¶¶ 4, 14, 19. Plaintiffs also request that the Court issue an injunction requiring Smith & Rogers to turn over any records from November 2009 onward to Plaintiffs' auditor. Pls.' Mot. Entry Default J. 2.

Section 502(e)(2) of ERISA provides for federal jurisdiction "in the district where the plan is administered." 28 U.S.C. § 1332(e)(2). According to the complaint, both the IPF and the IMI are administered in the District of Columbia. Compl. ¶ 2. The Court therefore has jurisdiction over the case. Plaintiffs filed the complaint within ERISA's three-year statute-of-limitations period. See 29 U.S.C. § 1113.

## II.   Standard of Review

The standard for default judgment, as set forth by the Court in previous cases, is a two-step procedure. E.g., Boland v. Cacper Construction Corp., 130 F. Supp. 3d 379, 382 (D.D.C. 2015). First, the plaintiff requests that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, the plaintiff must move for entry of default judgment. Fed. R. Civ. P. 55(b). Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Id. After establishing liability, the court must make an independent evaluation of the damages to be awarded and has "considerable latitude

in determining the amount of damages." Id. The court may hold a hearing or rely on "detailed affidavits or documentary evidence" submitted by plaintiffs in support of their claims. Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

### III. Analysis

The Court must determine whether entry of default judgment is appropriate and, if Smith & Rogers is liable, whether Plaintiffs are entitled to the manner and amount of relief they request. The Court concludes that Smith & Rogers breached its duties under ERISA and the Collection Procedures and that Plaintiffs are entitled to the monetary and injunctive relief requested.

#### A. Liability

Plaintiffs filed suit in August 2015 to recover the damages prescribed by ERISA and the Collection Procedures. Compl. ¶ 1. Smith & Rogers was served with the summons and complaint on November 12, 2015. Pls.' Mot. Entry Default J. 1. The Clerk of the Court declared it to be in default on December 14, 2015. Id. at 2. On June 23, 2016, the Court issued an Order to Show Cause as to why judgment should not be entered for Plaintiffs and set July 7, 2016 as the deadline for Smith & Rogers to respond. Smith & Rogers has not responded to either the complaint, the Clerk's entry of default, or the Court's Order to Show Cause.

Because the Clerk of the Court has entered default and Smith & Rogers has failed to respond, the Court accepts Plaintiffs' well-pleaded allegations and holds that Smith & Rogers is liable and entry of default judgment is appropriate. See Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d at 67. ERISA requires employers to make contributions to multiemployer plans "in accordance with the terms and conditions of" the relevant collective-bargaining agreements. 29 U.S.C. § 1145. The IPF and IMI's Collection Procedures specify that contributions are due "on or before the 15th day of the month" after the month in which work was performed. Stupar Decl. Attach. 1 § I.A.1.

4

They further provide that "[a]udits will be conducted to ensure full compliance with employer obligations" to pay owed contributions. Id. § III. Plaintiffs have submitted the declaration of David F. Stupar, the Executive Director of the IPF and an authorized representative of the IMI, confirming Smith & Roger's refusal to submit to an audit and to pay late fees for covered work performed between December 2011 and October 2014. Stupar Decl. ¶¶ 9–12. By failing to pay late fees, Smith & Rogers is liable for contractual and statutory damages.

The Court may enter default judgment when a defendant makes no request "to set aside the default" and gives no indication of a "meritorious defense." Fanning, 257 F.R.D. at 7. Smith & Rogers, as noted above, has not responded to the complaint since being served in November 2015. The Court thus concludes that entry of default judgment against Smith & Rogers is appropriate.

      B.      <u>Damages</u>

The next issue before the Court is the amount of damages due: "Plaintiffs must prove these damages to a reasonable certainty." Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d at 68. Under ERISA, employers are required to pay any delinquent contributions, interest on unpaid contributions at a rate determined under the plan, liquidated damages at a rate of up to 20 percent or an additional interest assessment at the rate provided under the plan (whichever is higher), and legal fees. 29 U.S.C. § 1132(g)(2). The Ohio Bricklayers Pension and Health & Welfare Funds Employer Delinquency Procedures and Audit Policy also obligates employers to pay late fees for work covered by the agreement that has already been performed. Stupar Decl. ¶ 12. When a defendant has failed to respond, the Court must make an independent determination—by relying on affidavits, documentation, or an evidentiary hearing—of the sum to be awarded as damages.

As support for their requested damages, Plaintiffs have submitted declarations from David F. Stupar and Charles V. Mehler III, Plaintiffs' former attorney of record and former counsel at Dickstein Shapiro LLP. Both attest to having personal knowledge of the facts regarding the

assessment of late fees owed by Smith & Rogers, as well as the costs incurred in the current suit. Stupar Decl. ¶ 1; Mehler Decl. ¶ 1. Courts of the district, including this one, have accepted similar declarations in support of motions for default judgment regarding monetary damages owed to IPF, IMI, and relevant Local Funds. See Cacper Construction Corp., 130 F. Supp. 3d at 383; Providence Constr., 304 F.R.D. at 37; Elite Terrazzo Flooring, 763 F. Supp. 2d at 69.

Stupar's declaration details the amounts owed for late fees, the court fees, and the process server's fee. Stupar Decl. ¶¶ 12–14. He affirms that Local Funds determined that Smith & Rogers owed $6,417.36 in late fees for work performed between December 2011 and October 2014. Id. ¶ 12. He also explains that Smith & Roger's delinquent contributions could not be assessed because the company denied IPF access to its books and records for an audit. Id. ¶¶ 7–10. Court fees include the $400 filing fee and $453 for service of process. Id. ¶¶ 13–14. The fees outlined above total $7,270.36.

      C.     Attorney's Fees

Aside from contractual damages, ERISA also requires defendants to pay plaintiffs' reasonable attorney's fees. 29 U.S.C. § 1132(g)(2)(D). In support of the requested attorney's fees, Mr. Mehler's declaration sets forth in detail the services provided to Plaintiffs. Mehler states that Dickstein Shapiro has extensive experience in employee-benefit litigation, including representation of multiemployer pension plans. Mehler Decl. ¶¶ 7–9. He notes that the firm has charged reduced hourly rates to the IPF in the spirit of public interest. Id. ¶¶ 6, 10. At the time the declaration was made, Mehler had worked at the firm for fifteen years. Id. ¶ 12. Reflecting his expertise and experience, Mehler charged $590 per hour in 2014, and $615 per hour in 2015 and 2016. Id. ¶¶ 12,

14. A paralegal assigned to work on the case charged $170 per hour. Id. ¶ 14. Calculated at those rates, Plaintiffs' legal fees amount to $9,258 for 34.1 hours of work.[2] Id. ¶ 16.

Mehler's declaration outlines the preparation and work performed by Dickstein Shapiro from "initial demand letters sent in November 2014 through the filing of motion for default judgment papers in January 2016,"[3] and indicates that the majority of the total hours billed were "performed by a lower-cost paralegal rather than counsel in an effort to limit the legal fees incurred." Id. ¶ 17. Because this declaration constitutes the type of "detailed . . . documentary evidence" on which the Court may rely, see Fanning, 257 F.R.D. at 7, the Court concludes that Plaintiffs have justified the hours expended in this case.

The Court likewise finds the requested rates to be reasonable. Many courts have found the market rate to be reasonable in similar cases. See, e.g., Boland v. McCarey Masonry, LLC, No. 15-cv-01404 (D.D.C. Nov. 13, 2015); Providence Constr. Corp., 304 F.R.D. at 37; Flynn v. Pulaski

---

[2] Attorney Mehler's declaration states that attorney's fees equal $9,598.00. The actual amount, however, based on the hours and rates presented for the paralegal, is $9,258.00. See Mehler Decl. ¶¶ 14–15. This $340 difference is reflected in the total monetary judgement granted—$16,528.36—as compared to the requested amount of $16,868.36.

[3] Specifically, these tasks included "(a) drafting and sending an initial demand to Defendant for delinquent reports and contributions, followed by audit demand letters seeking to grant the Plaintiff's auditor access to Defendant's books and records for the time period November 2009 through the present, (b) corresponding with both counsel for [Ohio] Local Funds and Plaintiffs auditor regarding late fees owed by Defendant to Local 36 [Ohio] and Local 55 [Ohio] as well as their noncompliance with audit access, (c) drafting and reviewing papers to initiate litigation against Defendant to grant Plaintiffs auditor access to books and records in addition to late fees owed to both Local 36 [Ohio] and Local 55 [Ohio], (d) drafting and obtaining assignments from [Ohio] Local Funds in which Defendant owed late fees as well as obtaining procedures from counsel related to collection of said late fees for [Ohio] Local Funds, (g) preparing and filing the Complaint in this Court on August 26, 2015, after the Defendant failed to respond to both delinquency and multiple allow audit demand letters, (h) communicating with the process server regarding obtaining service on the Defendant, which resulted in process server's unsuccessful attempts at serving the Defendant and Plaintiffs having to prepare papers to serve process onto the Ohio Secretary of State, and (i) preparing and filing the default papers in December 2015 when Defendant failed to answer or otherwise respond to the Complaint." Mehler Decl. ¶ 16.

Constr. Co., No. 02-cv-2336, 2006 WL 3755218, at *2 (D.D.C. Dec. 19, 2006) (holding that the market rate is appropriate "where, as here, counsel provides a public-spirited discount to the ERISA plan"). Given that the firm used market rates and tried to maximize the work done by a lower-cost paralegal, the Court finds the award of attorney's fees to be reasonable here. The Court therefore determines that Plaintiffs are entitled to $9,258.00 in attorney's fees.

### D. Injunctive Relief

The final issue before the Court is whether Plaintiffs are entitled to their requested equitable relief: an injunction requiring Smith & Rogers "to turn over to Plaintiff's auditor its books and records for the time period of November 2009 through the present" and remit any delinquent contributions found as a result of the audit. Compl. ¶ 17. ERISA permits courts to grant "other legal or equitable relief as [it] deems necessary." 29 U.S.C. § 1132(g)(2)(E). In similar situations with non-responsive defendants, courts have awarded injunctions requiring an employer to comply with its obligations under ERISA and collective bargaining agreements. See Boland v. Yoccabel Construction Company, Inc., 293 F.R.D. 13, 20 (D.D.C. 2013); ZAK Architectural Metal & Glass, LLC., 635 F. Supp. 2d at 26; Carpenters Labor-Management Pension Fund v. Freeman-Carder, LLC, 498 F. Supp. 2d 237, 242 (D.D.C. 2007) (directing the defendant "to permit, and cooperate with, an audit of its books and records for the time periods under the collective bargaining agreement that have not yet been audited and to remit contributions revealed by that audit").

The General Collection Procedures govern the process for detecting and collecting owed contributions from participating employers, like Smith & Rogers. Stupar Decl. Attach. 1. These governing procedures emphasize the importance of audits in ensuring employer compliance, and set expectations for employers that they are subject to audits, as well as to the costs of audits if delinquent contributions are discovered. Id. § III; see also Bd. of Trustees of Hotel & Rest. Emps. Local 25 v. JPR, Inc., 136 F.3d 794, 798 (D.C. Cir. 1998) ("[I]f the [Collection Procedures]

require[] employers who are in default to pay routine auditing fees, ERISA empowers the Trustees to enforce that requirement."). Stupar's declaration affirms that Plaintiffs attempted to conduct an audit of Smith & Roger's books and records, and that Smith & Rogers, despite repeated requests, denied the IPF auditor access to its books. Stupar Decl. ¶¶ 8–11.

The Court therefore grants Plaintiffs' petition for an injunction "because the defendant has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." ZAK Architectural Metal & Glass, LLC., 635 F. Supp. 2d at 26 (quoting Int'l Painters & Allied Trades Indus. Pension Fund v. Newburgh, 468 F. Supp. 2d 215, 218 (D.D.C. 2007)). The Court directs Smith & Rogers to deliver its books and records from November 2009 onward to Plaintiffs' auditor and to pay any delinquent contributions uncovered through the audit.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Entry of Default Judgment. The Court will issue an order consistent with this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 19, 2016